UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SHAWN K. C.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C18-1809-MLP

ORDER

## I. INTRODUCTION

Plaintiff seeks review of the denial of his application for Supplemental Security Income. Plaintiff contends the administrative law judge ("ALJ") erred in assessing certain medical opinions. (Dkt. # 11 at 2.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II. BACKGROUND

Plaintiff was born in 1979, has an eleventh-grade education, and has worked as a door-to-door salesperson and restaurant cook. AR at 57, 253-56. Plaintiff was last gainfully employed in 2009. *Id.* at 253.

In November 2015, Plaintiff applied for benefits, alleging disability as of January 1, 2008. AR at 198-207, 227. Plaintiff's application was denied initially and on reconsideration,

ORDER - 1

and Plaintiff requested a hearing. *Id.* at 122-30, 134-40, 142-44. After the ALJ conducted a hearing on February 27, 2018 (*id.* at 53-91), the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 33-48.

Utilizing the five-step disability evaluation process,[1] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since his application date.

Step two: Plaintiff's unspecified neurocognitive disorder, post-traumatic stress disorder, depressive disorder, history of fractured left hip (2013), recurrent ankle edema, and lumbar strain are severe impairments.

Step three: These impairments do not meet or equal the requirements of a listed impairment.[2]

Residual Functional Capacity ("RFC"): Plaintiff can perform light work with additional limitations: he can occasionally stoop, squat, crouch, crawl, kneel, or climb ramps/stairs. He can never climb ladders, ropes, or scaffolds. He can never drive, balance, work at heights, or work in close proximity to hazardous conditions. He is capable of unskilled, repetitive, routine tasks in two-hour increments. He should have no contact with the public. He is capable of working in proximity to but not in coordination with co-workers; he can have occasional contact with supervisors.

Step four: Plaintiff cannot perform past relevant work.

Step five: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR at 35-47.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court.

## III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social

---
[1] 20 C.F.R. § 416.920.
[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id.*

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV. DISCUSSION

### A. The ALJ Did Not Err in Evaluating the Medical Opinion Evidence

Plaintiff challenges the ALJ's assessment of a number of medical opinions, each of which the Court will consider in turn.

*1. Legal Standards*

If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas*, 278 F.3d at 957; *Orn v. Astrue*, 495 F.3d 625, 632-33 (9th Cir. 2007).

### 2. *James Symonds, M.D.*

Dr. Symonds examined Plaintiff in April 2016 and completed a narrative report describing Plaintiff's physical symptoms and limitations. AR at 309-16. Dr. Symonds diagnosed Plaintiff with, *inter alia*, a history of a fractured left hip in 2013. *Id*. at 313. Dr. Symonds opined that Plaintiff could stand/walk and sit for six hours each during an eight-hour workday, and would need the ability to frequently change between sitting and standing. *Id*. at 314.

The ALJ gave great weight to most of Dr. Symonds' opinion, but discounted his opinion that Plaintiff required a sit/stand option because Dr. Symonds provided no basis for this requirement and the record does not support this restriction. AR at 43. The ALJ also noted that although Dr. Symonds stated that Plaintiff had a previous hip fracture that had been treated at Harborview Hospital, there was no evidence to support that statement. *Id*. at 44.

Plaintiff argues that the ALJ erred in discounting Dr. Symonds' opinion as unsupported by the record, citing Plaintiff's report to Dr. Symonds that an assault three years prior resulted in a hip fracture and lumbar strain. (Dkt. # 11 at 4 (citing AR at 309-10).) Plaintiff's reference to

his own self-report is unavailing, however, because the ALJ discounted Plaintiff's self-report and Plaintiff does not assign error to that finding. *See* AR at 39-41. Furthermore, Dr. Symonds referred Plaintiff for a hip and pelvis x-ray (*id*. at 313), which revealed normal hip joints with no evidence of an old hip fracture (*id*. at 315). Dr. Symonds did not apparently review the x-ray until after he had completed his report. *Compare id*. at 309 (Dr. Symonds' report dated April 6, 2016) *with id*. at 315 (x-ray report signed by Dr. Symonds on April 15, 2016).

Plaintiff also references Dr. Symonds' clinical findings as the basis for his opinion, but there is no explicit link between any particular finding and the opinion regarding Plaintiff's need for a sit/stand option. Dr. Symonds describes at most merely mild abnormalities related to Plaintiff's hip and lumbar issues, such as mildly decreased range of motion in the lumbar spine, mild tenderness in the spine, tenderness of left hip with full range of motion (with some pain). AR at 312-13. It was reasonable for the ALJ to find that these relatively mild findings do not support the need for a sit/stand option, and Plaintiff's proffered alternate interpretation of the evidence does not establish that the ALJ erred. (Dkt. # 11 at 4.)

The ALJ also found that Dr. Symonds' opinion regarding the sit/stand option was not supported by the record as a whole, because the "record does not contain evidence of any reasons the claimant should have such a limitation." AR at 43. Although Plaintiff suggests that this finding lacks the requisite specificity (dkt. # 11 at 4-5), it is not clear how the ALJ could have referenced the non-existence of evidence more specifically. Because the ALJ's interpretation of the record on this point appears to be reasonable, the Court will not disturb the ALJ's assessment of Dr. Symonds' opinion.

Because the ALJ's reasons to discount Dr. Symonds' opinion are specific and legitimate, Plaintiff has failed to establish that the ALJ erred in discounting this opinion.

*3. Morgan Liddell, M.D.*

Dr. Liddell examined Plaintiff in May 2016 and completed a narrative report describing his psychiatric symptoms and limitations. AR at 318-23. Dr. Liddell's functional assessment reads as follows:

> The claimant's psychiatric disorders would likely impair his ability to manage his own funds in his best interest (given his poor insight and judgment despite having fair calculations), interact with coworkers and the public given his irritability, poor concentration, memory, would be impaired in his ability to complete a normal workday or workweek without interruptions or manage usual stress encountered in the workplace due to a psychiatric illness. The claimant, however, is able to perform simple and repetitive tasks, perform detailed and complex tasks, accept instructions from supervisors and there is insufficient evidence to say that he would not be able to perform work activities on a consistent basis or maintain regular attendance.

*Id*. at 323. The ALJ gave significant weight to Dr. Liddell's opinion and found that it was consistent with his limiting Plaintiff to performing unskilled, repetitive, routine tasks. *Id*. at 44.

Plaintiff argues that the ALJ misinterpreted Dr. Liddell's opinion to mean that he was capable of performing simple and repetitive tasks and capable of accepting instructions from supervisors. (Dkt. # 11 at 5-6.) Plaintiff suggests that a more careful reading of Dr. Liddell's opinion indicates impairment in a variety of functional areas. (*Id.* at 6.) It is true that Dr. Liddell opined that Plaintiff would be impaired as to managing his funds, interacting with coworkers and the general public, completing a normal workday/workweek, and dealing with typical workplace stress (AR at 323), but Plaintiff overstates the extent of Dr. Liddell's opinion: Dr. Liddell did not, as Plaintiff states (dkt. # 11 at 6), find that Plaintiff could not adequately perform in those areas, he merely described him as impaired. AR at 323. As such, the ALJ's RFC assessment is consistent with the limitations described by Dr. Liddell, because the ALJ limited Plaintiff to performing unskilled, repetitive, routine tasks with no public contact, no work in coordination with coworkers, and only occasional contact with supervisors. *See id*. at 38. Dr. Liddell did not

ORDER - 6

list any limitations that are necessarily inconsistent with that RFC assessment, and therefore Plaintiff has failed to establish error in the ALJ's treatment of Dr. Liddell's opinion. *See Turner v. Comm'r of Social Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (ALJ need not provide reason for rejecting physician's opinions where ALJ incorporated opinions into RFC; ALJ incorporated opinions by assessing RFC limitations "entirely consistent" with limitations assessed by physician).

### 4. David Widlan, Ph.D.

Dr. Widlan examined Plaintiff in November 2017 and completed a DSHS form psychological opinion describing his symptoms and limitations, rated mostly marked and severe. AR at 482-91. The ALJ found the marked and severe limitations indicated by Dr. Widlan to be inconsistent with the record showing Plaintiff's functioning, specifically his ability to independently complete his activities of daily living even while homeless. *Id*. at 45. The ALJ also noted that Plaintiff sought no mental health treatment during the adjudicated period, which undermined Dr. Widlan's opinion that Plaintiff's mental limitations were disabling. *Id*.

These reasons are specific and legitimate. The ALJ's decision details Plaintiff's activities, many of which are inconsistent with disabling mental limitations, such as Plaintiff's ability to manage his self-care, prepare food, perform chores, use public transportation, shop, handle money, and socialize. *See* AR at 40-41. Plaintiff's ability to complete these activities reasonably contradicts Dr. Widlan's opinion that he would have, for example, marked limitations in his ability to perform activities within a schedule, adapt to changes, and be aware of normal hazards. *Id*. at 484. Although the ALJ did not recite all of these activities in discussing Dr. Widlan's opinion, the ALJ referred to the discussion (*id*. at 45) earlier in the decision, which allows the Court to follow the ALJ's reasoning. *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004)

("Because it is proper to read the ALJ's decision as a whole, and because it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five, we consider the ALJ's treatment of the record evidence in support of both his conclusions at steps three and five." (internal citation omitted)); *Magallanes*, 881 F.2d at 755 ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion.").

Plaintiff's lack of mental health treatment also undermines Dr. Widlan's opinion regarding the severity of his mental conditions. *See, e.g., Blacksher v. Berryhill*, 762 Fed. Appx. 372, 374 (9th Cir. Feb. 26, 2019) (holding that the ALJ properly discounted a treating psychologist's opinion due to the claimant's "gaps in treatment"); *Evans v. Berryhill*, 759 Fed. Appx. 606, 608 (9th Cir. Jan. 7, 2019) (affirming an ALJ's rejection of a treating physician's opinion in part because plaintiff "received only sporadic treatment for his condition"). Although Plaintiff argues that his limitations prevented him from seeking mental health treatment, such that the ALJ should not have construed the lack of treatment as evidence that his conditions were not disabling, he cites no evidence indicating as much. (Dkt. # 11 at 7-8.) Counsel's speculation to that effect is not evidence that Plaintiff's limitations were the reason for his lack of treatment, and evidence of the limitations themselves (*Id.* at 8) is not alone sufficient to demonstrate that the limitations prevented him from seeking treatment. *See Molina*, 674 F.3d at 1114 ("Although Molina provided reasons for resisting treatment, there was no medical evidence that Molina's resistance was attributable to her mental impairment rather than her own personal preference[.]").

At the hearing, counsel asked Plaintiff why he had not received treatment and he cited scheduling problems. AR at 82-83. Counsel then asked whether Plaintiff's trouble trusting

people interfered with his ability to engage in treatment and Plaintiff answered: "Sometimes, yeah." *Id*. at 83. This testimony is at best equivocal as to the reason why Plaintiff did not receive treatment, and does not strongly support Plaintiff's argument in his briefing. In any event, Plaintiff's own testimony does not amount to medical evidence showing that his lack of treatment caused him to be unable to obtain treatment, and thus the ALJ did not err in considering Plaintiff's lack of treatment in assessing Dr. Widlan's opinion.

Because the ALJ's reasons to discount Dr. Widlan's opinion are specific and legitimate, Plaintiff has not shown that the ALJ erred in discounting the opinion.

### 5. *J. Alex Crampton, Psy.D. & Holly Petaja, Ph.D.*

Dr. Crampton examined Plaintiff in August 2015 and completed a DSHS form opinion describing his psychological symptoms and limitations. AR at 325-31. Dr. Petaja reviewed and summarized Dr. Crampton's opinion for purposes of determining Plaintiff's eligibility for state benefits. *Id*. at 324, 330-31. The ALJ rejected the marked and severe limitations listed in the form opinions of Drs. Crampton and Petaja, finding those limitations to be inconsistent with Plaintiff's demonstrated functioning as well as his lack of mental health treatment. *Id*. at 44. The ALJ also noted that Dr. Crampton relied entirely on Plaintiff's self-report, and that some of the statements Plaintiff reported to Dr. Crampton were inconsistent with other statements in the record. *Id*. at 44-45. Because Dr. Petaja's opinion was rendered in exclusive reliance on Dr. Crampton's opinion, the ALJ found that it was unreliable for the same reasons as Dr. Crampton's opinion. *Id*. at 45.

Plaintiff mounts several challenges to the ALJ's reasoning. First, Plaintiff argues that the ALJ's finding that Dr. Crampton's opinion is inconsistent with his demonstrated functioning is too vague. (Dkt. # 11 at 7.) As discussed *supra*, the ALJ properly referred to his earlier

discussion of Plaintiff's activities (AR at 44), which specifically mentions activities that are reasonably inconsistent with the limitations listed by Dr. Crampton and adopted by Dr. Petaja. This is a specific, legitimate reason to discount the opinions. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (inconsistency with the record properly considered by ALJ in rejection of physician's opinions); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (affirming an ALJ's rejection of a treating physician's opinion that was inconsistent with the claimant's level of activity).

Next, Plaintiff argues that the ALJ erred in discounting the opinions based on his lack of treatment (dkt. # 11 at 7-8), but, as explained *supra*, the Court rejects this argument because there is no medical evidence showing that Plaintiff's limitations were the cause of his lack of treatment.

Plaintiff goes on to argue that the ALJ erred in discounting Dr. Crampton's opinion based on his reliance on self-reporting, because Dr. Crampton based his opinion on his own independent clinical examination. (Dkt. # 11 at 8-9.) This argument is belied by Dr. Crampton's repeated references to Plaintiff's self-report, however. *See, e.g.*, AR at 326 (describing self-reported limitations caused by hallucinations, "possible paranoid delusions" and verbal outbursts). Moreover, the ALJ identified a specific inaccuracy in Plaintiff's self-report to Dr. Crampton: Plaintiff's attributing his mental limitations to his response to a wrongful termination, rather than to head trauma as he had stated on other occasions. *Id*. at 44 (referencing *id*. at 66, 73, 303, 325). Plaintiff contends that the ALJ ignored evidence that he has memory deficits that could have explained the inaccuracies in his reporting (dkt. # 11 at 9), but this argument does not establish error in the ALJ's decision: instead, it supports the ALJ's decision because Plaintiff admits he is a poor historian and an opinion rendered in reliance on inaccurate information is

properly discounted. *See, e.g.*, *Calkins v. Astrue*, 384 Fed. Appx. 613, 615 (9th Cir. Jun. 17, 2010) ("[A]n ALJ must be permitted to discount an opinion based principally upon a claimant's self-reporting if the record contains objective evidence that the self-reporting is not credible."). Accordingly, the Court finds that the ALJ did not err in discounting Dr. Crampton's opinion, or in discounting Dr. Petaja's opinion based wholly upon that opinion.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

Dated this 12th day of August, 2019.

MICHELLE L. PETERSON
United States Magistrate Judge